IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Stacey Lee Peltier, | ) | |
| Petitioner, | ) ) ) | **ORDER GRANTING DEFENDANT'S** |
| vs. | ) ) | **MOTION TO VACATE, SET ASIDE,** |
| United States of America, | ) ) | **OR CORRECT SENTENCE** |
| Respondent. | ) ) ) | Case Nos. 1:16-cv-239 and 1:16-cv-238 |

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| Stacey Lee Peltier, | ) ) | Case Nos. 1:99-cr-005 and 1:00-cr-043 |
| Defendant. | ) ) | |

The Defendant is serving concurrent federal sentences stemming from two unrelated cases. See Case Nos. 1:99-cr-005 (drug case) and 1:00-cr-043 (gun case). The cases were consolidated for sentencing and on appeal. See United States v. Peltier, 276 F.3d 1003 (2002). On June 24, 2016, the Defendant filed a "Motion to Vacate under 28 U.S.C. § 2255 (*Johnson v. U.S.)*" in both cases. See Docket No. 74 in Case No. 1:99-cr-005 and Docket No. 89 in Case No. 1:00-cr-043. The Defendant's motions are based on the United States Supreme Court's holding in Johnson v. United States, 135 S. Ct. 2551 (2015). After an initial review of the motions, and after the Defendant received permission from the Eighth Circuit Court of Appeals to file a successive Section 2255 motion in both cases, the Court ordered the Government to file a response to the Defendant's motions. Both motions have now been fully briefed and are ripe for a decision. See Docket Nos. 79 and 80 in Case No. 1:99-cr-005 and Docket Nos. 98, 101, 102,

1

and 103 in Case No. 1:00-cr-043. For the reasons set forth below, the motion in Case No. 1:99-cr-005 is denied and the motion in Case No. 1:00-cr-043 is granted.

I.  **BACKGROUND**

In the gun case, a jury found Stacey Peltier guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), 924(a)(2), and 924(e), and of receiving a firearm and ammunition while under felony indictment in violation of 18 U.S.C. § 922(n) and 924(a)(1)(D) on October 11, 2000. In the drug case, Peltier pled guilty, pursuant to a plea agreement, to possessing methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) on October 16, 2000. A consolidated sentencing hearing on the two cases was held on December 21, 2000, at which time it was determined that because Peltier had eighteen prior convictions in North Dakota for class C burglary, he qualified as an armed career criminal under 18 U.S.C. § 924(e). While the sentencing judge found the eighteen burglaries were violent felonies for purposes of the Armed Career Criminal Act (ACCA), no specific finding was made as to whether the burglaries qualified under the "enumerated offenses clause," the "residual clause," or both. The sentencing judge's finding that Peltier was an armed career criminal triggered a mandatory minimum sentence of 180-months in the gun case. The Sentencing Guideline range in the gun case was determined to be 360-life. The Sentencing Guideline range in the drug case was found to be 210-262 months. After finding Peltier's criminal history was overstated, the Court departed downward in the gun case and sentenced Peltier to 292-months on the gun charge and a concurrent 210-months on the drug charge. An appeal was taken and the sentence was affirmed. United States v. Peltier, 276 F.3d 1003 (8th Cir. 2002).

In 2003, Peltier filed a Section 2255 motion relating to both the gun and drug cases. The Court denied the motion on January 27, 2004. Peltier did not appeal the denial of his Section 2255 motion. Peltier filed a petition for relief under 28 U.S.C. § 2241 in August 2013, which was also denied.

On June 24, 2016, Peltier filed Section 2255 motions in both cases citing the recent opinion of the United States Supreme Court in Johnson v. United States, 135 S. Ct. 2551 (2015), as the basis for the motions. Peltier contends that in the wake of *Johnson*, he no longer qualifies as an armed career criminal. Peltier obtained permission from the Eighth Circuit Court of Appeals to file a successive Section 2255 motion in both cases challenging his sentence under the ACCA. It is undisputed that *Johnson* has no application to Peltier's conviction in the drug case. Therefore, no reduction in the 210-month sentence imposed in the drug case is sought, and the Section 2255 motion in the drug case is denied. Peltier's Section 2255 motion in the gun case has been fully briefed and is ripe for a decision.

## II. STANDARD OF REVIEW

"28 U.S.C. § 2255 provides a federal prisoner an avenue for relief if his 'sentence was imposed in violation of the Constitution or laws of the United States, or . . . was in excess of the maximum authorized by law.'" King v. United States, 595 F.3d 844, 852 (8th Cir. 2010) (quoting 28 U.S.C. § 2255(a)). This requires a showing of either constitutional or jurisdictional error, or a "fundamental defect" resulting in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). A 28 U.S.C. § 2255 motion is not a substitute for a direct appeal and is not the proper way to complain about simple trial errors. Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994). A 28

U.S.C. § 2255 movant "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). Section 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." Davis, 417 U.S. at 343.

In a case involving an ACCA conviction based on *Johnson*, "the movant carries the burden of showing that the Government did not prove by a preponderance of the evidence that his conviction fell under the ACCA." Redd v. United States, No. 4:16-CV-1665, 2017 WL 633850, at *2 (E.D. Mo. Feb. 16, 2017) (quoting Hardman v. United States, 149 F. Supp. 3d 1144, 1148 (W.D. Mo. 2016)). The movant need not show he was sentenced under the residual clause to maintain a Section 2255 claim under *Johnson*. United States v. Winston, 850 F.3d 677, 682 (4th Cir. 2017) (noting sentencing judges are not required to specify under which clause of 18 U.S.C. § 924(e)(2)(B) an offense qualified as a violent felony). A movant may rely on the new rule of constitutional law announced in *Johnson* if his sentence may have been predicated on the now void residual clause.

On a Section 2255 motion, the determination of whether a prior conviction qualifies as a predicate violent felony under the ACCA is subject to *de novo* review. Id. at 683; In re Chance, 831 F.3d 1335, 1338-39 (11th Cir. 2016). The court's review is not constrained to the law as it existed when the movant was sentenced, but should be made with the assistance of binding intervening precedent which clarifies the law. In re Chance, 831 F.3d at 1340; Winston, 850 F.3d at 683-84 (applying intervening case law); Redd, No. 4:16-CV-1665, 2017 WL 633850, at *4 n. 3. (noting decisions which clarify or apply existing law or a settled rule apply on collateral review). The burden remains on the movant to show that his sentence, in the wake of *Johnson*, is no longer authorized by the ACCA. In re Chance, 831 F.3d at 1341.

## III. LEGAL DISCUSSION

The ACCA's 180-month mandatory minimum penalty applies when a defendant has at least three prior felony convictions for a "serious drug offense" or a "violent felony," as defined in 18 U.S.C. § 924(e)(2). Absent the armed career criminal finding, the maximum sentence for being a felon in possession of a firearm is ten years. See 18 U.S.C. § 924(a)(2). Peltier has eighteen prior felony convictions for burglary under North Dakota law. The question before the Court is whether Peltier's eighteen burglary convictions qualify as violent felonies under the ACCA's enumerated offenses clause. The ACCA defines "violent felony" as follows:

> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
>
> > (i) **has as an element the use, attempted use, or threatened use of physical force against the person of another**; or
> >
> > (ii) <u>is burglary, arson, or extortion, involves use of explosives</u>, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). The portion of this definition in bold is known as the "force clause" or "elements clause." The underlined portion of this definition is known as the "enumerated offense clause." The italicized portion is known as the "residual clause."

In *Johnson,* the United States Supreme Court held the residual clause of the ACCA was vague, and the application of the residual clause violates the Constitution's guarantee of due process. Johnson, 135 S. Ct. at 2563. The holding of *Johnson* applies retroactively on collateral review. Welch v. United States, 136 S. Ct. 1257, 1268 (2016). However, the holding in *Johnson* does not apply to the advisory federal Sentencing Guidelines. Beckles v. United States, 137 S. Ct. 886, 895 (2017) (holding the Sentencing Guidelines are not subject to a void for vagueness

challenge under the Fifth Amendment Due Process Clause). Therefore, the residual clause no longer provides a basis for qualifying a prior conviction as a "violent felony" under the ACCA.

The crimes listed in the enumerated offense clause refer to the generic version of the offense, and not to all versions of offenses. See Taylor v. United States, 495 U.S. 575, 598 (1990); Mathis v. United States, 136 S. Ct. 2243, 2248 (2016). In terms of burglary, the offense at issue in this case, the Supreme Court has said generic burglary consists of the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit an offense." Taylor, 495 U.S. at 599. In order to determine if a prior conviction qualifies, courts apply the "categorical approach." Taylor, 495 U.S. at 600; Descamps v. United States, 133 S. Ct. 2276, 2281 (2013). The categorical approach requires comparing the elements of the offense of conviction to the elements of the generic offense. Taylor, 495 U.S. at 600; Descamps, 133 S. Ct. at 2281. The particular facts underlying the prior conviction are not considered. Taylor, 495 U.S. at 600. The prior conviction qualifies only if the elements of the offense are the same or narrower than the elements of the generic offense. Descamps, 133 S. Ct. at 2281. If the statute is broader than the generic crime, a conviction under that statute cannot serve as a predicate offense under the ACCA. Id. at 2283.

However, in a narrow range of cases, the sentencing court may apply the "modified categorical approach" and look beyond the statutory elements to a limited class of documents to determine what the elements of the underlying offense were. Id. at 2283-84. "The modified categorical approach is available only when a statute lists alternative elements and thus defines multiple separate crimes" and reference to the statute alone does not disclose which version of the offense was charged. United States v. Bess, 655 Fed. App'x 518, 520 (8th Cir. 2016). Such a statute is "divisible," because it "comprises multiple, alternative versions of the crime."

Descamps, 133 S. Ct. at 2284.  The modified categorical approach may only be used when the elements of the offense are divisible and may not be used when the elements are indivisible.  Id. at 2282.  The limited class of documents the court may review to determine which alternative, with which elements, formed the basis of the prior conviction includes the charging document, jury instructions, plea agreement, and transcript of the plea colloquy.  Id. at 2284.  The court can then compare the elements of the prior conviction with the elements of the generic offense, just as is done when applying the categorical approach, and determine whether the prior conviction corresponds to the generic offense and thus qualifies as a violent felony.  Id.; Mathis, 136 S. Ct. at 2249.  The focus always remains on the elements, and the underlying facts remain irrelevant.  Descamps, 133 S. Ct. at 2285; Mathis, 136 S. Ct. at 2253.

In some cases it can be difficult to determine whether the statute of conviction sets forth alternative elements, or alternative factual means, of satisfying a single element.  Mathis, 136 S. Ct. at 2249.  The distinction is important because the sentencing court may only look to the elements of the offense and not to the facts related to the defendant's conduct.  Id. at 2251.  For example, a statute may set forth various places that the crime of burglary could occur and satisfy an element of the offense, none of which are essential to the conviction.  Id. at 2249.  State court case law may provide the elements versus means answer.  Id. at 2256.  The statute itself may provide the answer because if the alternatives carry different punishments then they are clearly elements.  Id.  The statute may contain a list of "illustrative examples" that are simply means of commission and not elements that must be charged.  Id.  The statute may also identify things which must be charged, and thus are elements, and things which need not be charged, and thus are means.  Id.  The court may also "peek" at the record documents to determine whether the items listed in the statute are elements or means.  If the statute and the record fail to provide a

clear answer, the conviction does not qualify as a predicate offense for ACCA purposes. Id. at 2257.

The threshold question in this case is whether Peltier's eighteen class C North Dakota burglary convictions qualify as violent felonies under the enumerated offense clause of the ACCA. The parties dispute whether Peltier's burglary convictions qualify. It does not appear the Eighth Circuit Court of Appeals has ever had occasion to address North Dakota's burglary statute in relation to the ACCA. Peltier's burglary convictions stem from 1993. North Dakota's burglary statute was last amended in 1973. See N.D.C.C. § 12.1-22-02.

### A. THE CATEGORICAL APPROACH

Applying the "categorical approach" requires the Court to compare the elements of generic burglary with the elements of North Dakota's burglary statute. Generic burglary consists of the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit an offense." Taylor, 495 U.S. at 599. North Dakota's class C burglary statute provides as follows:

> 1. A person is guilty of burglary if he willfully enters or surreptitiously remains in a building or occupied structure, or a separately secured or occupied portion thereof, when at the time the premises are not open to the public and the actor is not licensed, invited, or otherwise privileged to enter or remain as the case may be, with intent to commit a crime therein.

N.D.C.C. § 12.1-22-02(1). The statute does not define the term "building." "Occupied structure" is defined as follows:

> 4. "Occupied structure" means a structure or <u>vehicle</u>:
>
>> a. Where any person lives or carries on business or other calling; or
>>
>> b. Which is used for overnight accommodation of persons.

> c. Any such structure or vehicle is deemed to be "occupied" regardless of whether a person is actually present.

N.D.C.C. § 12.1-22-06 (emphasis added).

Peltier contends North Dakota's burglary statute is broader than the generic version because the definition of "occupied structure" includes vehicles. The Government contends the vehicles referenced are those in which a person lives and uses as a residence, and thus the statute is not broader than the generic version.

The Court agrees with Peltier that because North Dakota's burglary statute covers vehicles, it covers more conduct than generic burglary. Thus, Peltier's North Dakota burglary convictions do not qualify categorically as ACCA violent felonies. See Shepard v. United States, 544 U.S. 13, 15-16 (2005) (noting the ACCA "makes burglary a violent felony only if committed in a building or enclosed space ('generic burglary'), not in a boat or motor vehicle"); Mathis, 136 S. Ct. at 2250 (Iowa burglary statute covering "any building, structure, [or] land, water, or air vehicle" was broader than generic burglary); United States v. Bess, 655 Fed. App'x 518, 519 (8th Cir. 2016) (finding Missouri's second-degree burglary statute defined inhabitable structure to include a ship, trailer, sleeping car, airplane, or other vehicle or structure was broader than generic burglary).

The Eighth Circuit Court of Appeals has very recently rejected the Government's argument that vehicles in which a person lives or can be used for overnight accommodation fall within the definition of generic burglary. See United States v. Lamb, 847 F.3d 928, 931 (8th Cir. 2017) (finding Wisconsin's burglary statute which covers motor homes was "without question" broader than generic burglary); United States v. Sims, No. 16-1233, slip op. at 5 (8th Cir. April 27, 2017) (finding Arkansas' residential burglary statute which applies to vehicles in which a person lives or that are used for overnight accommodation was broader than generic burglary).

9

The Eighth Circuit decision in Sims was issued just a few days ago and is directly on point. The Supreme Court has never made an exception to the definition of generic burglary for vehicles of any sort, or for vehicles that have been adapted for some other use such as sleeping or conducting business.

The Missouri burglary statute which the Eighth Circuit Court of Appeals found was broader than generic burglary in Bess is virtually identical to North Dakota's burglary statute. The Missouri burglary statute analyzed in Bess provided "[a] person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." Mo. Rev. Stat. § 569.170.1. Although Missouri has since repealed its definition of "inhabitable structure," at the time Bess was decided, Missouri law defined "inhabitable structure" as follows:

> "Inhabitable structure" includes a ship, trailer, sleeping car, airplane, or other <u>vehicle</u> or structure:
>
> (a) Where any person lives or carries on business or other calling; or
>
> (b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation; or
>
> (c) Which is used for overnight accommodation of persons. Any such <u>vehicle</u> or structure is "inhabitable" regardless of whether a person is actually present.

Mo. Rev. Stat. § 569.010(2) (emphasis added). The Eighth Circuit Court of Appeals in Bess reasoned that because this definition of "inhabitable structure" included "a ship, trailer, sleeping car, airplane, or other <u>vehicle</u> or structure" it covered a broader range of conduct than generic burglary. Bess, 655 Fed. App'x at 519 (emphasis added).

North Dakota's burglary statute and the Missouri second degree burglary statute found overbroad by the Eighth Circuit Court of Appeals in Bess are virtually identical. In addition,

10

North Dakota's definition of "occupied structure" is very similar to the relevant Missouri definition of "inhabitable structure." North Dakota's definition of "occupied structure" is not as broad as Missouri's definition of "inhabitable structure" because it does not refer to ships, trailers, sleeping cars, or airplanes. However, both definitions refer to vehicles which is enough to make both statutes broader than generic burglary. See Mathis, 136 S. Ct. at 2250 (burglary statute which covers "land, water, or air vehicle" is broader than generic burglary); Descamps, 133 S. Ct. at 2284 (noting a burglary statute which covers automobiles is non-generic). Given the similarity in the two statutes which both cover vehicles, the Court concludes North Dakota's burglary statute is broader than generic burglary.

While the Government engages in linguistic gymnastics in an attempt to read the word "vehicle" out of North Dakota's definition of occupied structure, the Court is unpersuaded. The fact remains that the definition of "occupied structure" covers certain classes of vehicles which makes North Dakota's burglary statute broader than the generic version which does not cover any vehicles. Nevertheless, Peltier's burglary convictions may qualify as predicate offenses under the "modified categorical approach." See Descamps, 133 S. Ct. at 2284.

### B.   THE MODIFIED CATEGORICAL APPROACH

Before the Court can apply the "modified categorical approach," it must first determine whether the statute in question is divisible. See Bess, 655 Fed. App'x at 520. If the statute is not divisible, the Court is not allowed to apply the modified categorical approach. Id. A statute is only divisible if it lists alternative elements. Id. If the statute lists alternative means of satisfying an element, then it is not divisible, the modified categorical approach cannot be used, and the convictions in question do not qualify as ACCA predicates. Id. Since North Dakota's

burglary statute is very similar to Missouri's burglary statute, the Court will look to case law interpreting Missouri's statute for guidance.

The question becomes whether the phrase "building or occupied structure, or a separately secured or occupied portion thereof" in North Dakota's burglary statute contains alternative elements or alternative means. While the divisibility determination may seem straight forward in theory, the actual inquiry has proven to be anything but simple. The Eighth Circuit has determined that Missouri's second degree burglary statute contains two alternative elements: burglary "of a building" or "of an inhabitable structure." United States v. Sykes, 844 F.3d 712, 715 (8th Cir. 2016). The Eighth Circuit's holding was based on the use of the disjunctive "or" between the two phrases and without any review of Missouri state court decisions. Id. It was undisputed in *Sykes* the defendant had burglarized buildings rather than inhabitable structures and thus his Missouri second-degree burglary conviction were violent felonies for purposes of the ACCA. Id. at 715-16. A petition for rehearing *en banc* was denied on a 5-4 vote with the dissenting judges criticizing the lack of analysis on the divisibility issue. United States v. Sykes, No. 14-3139, 2017 WL 1314937, at *1-2 (8th Cir. Mar. 17, 2017). The holding in *Sykes* remains binding precedent for the time being. See United States v. Naylor, No. 16-2047, 2017 WL 1163645, at *2 (8th Cir. Mar. 28, 2017).

There does not appear to be any case law from the North Dakota Supreme Court which sheds light on the means versus elements question. The statute itself does not indicate what language must be charged. There is no difference in the penalty, which would be indicative of alternative elements, based on whether a "building" versus an "occupied structure" is charged. Most of the tools the United States Supreme Court in *Mathis* suggested the lower courts use in

12

making a divisibility determination are lacking when analyzing North Dakota's class C burglary statute.

North Dakota's pattern jury instructions support the contention the statute contains at least two separate elements: "building or occupied structure" and "a separate secured or occupied portion of a building or occupied structure" which are listed as alternates in the instruction. See North Dakota Criminal Pattern Jury Instruction K-9.12. North Dakota has chosen to define "occupied structure" but has not defined "building" and has not defined the phrase "building or occupied structure" as one term. See N.D.C.C. § 12.1-22-06. The lack of a definition for the phrase "building or occupied structure" supports the contention the phrase contains separate elements rather than alternate means. A "peek at the record" of documents is not helpful in this case. The only documents available for review are the charging documents in relation to twelve of Peltier's eighteen convictions. In nine of the cases, the entire statutory phrase "building or occupied structure, or a separately secured or occupied portion thereof" was included in the charging document. See Docket Nos. 101-3, 101-4, and 101-6. By using the entire statutory phrase, these charging documents shed no light on the divisibility issue. In three of the cases, the phrase "building or occupied structure" was used. See Docket No. 101-5. These documents would support the idea that "building or occupied structure" is one element.

While reasonable persons could disagree as to the divisibility of North Dakota's class C burglary statute, the Court finds it is divisible. See Sykes, 844 F.3d at 715 (relying on the disjunctive nature of Missouri's burglary statute to find it listed alternative elements and thus was divisible). As the Court noted above, North Dakota's class C burglary statute and the Missouri burglary statute at issue in *Bess* and *Sykes* are virtually identical. Section 12.1-22-02 of the North Dakota Century Code contains four distinct elements: "building," "occupied

structure," "separately secured or occupied portion of a building," and "separately secured or occupied portion of an occupied structure." Any one of these elements could be charged and proven to satisfy the locational element of the statute. If the charging document only references burglary of a "building" it would equate with generic burglary while reference to an "occupied structure" would not. See Taylor, 495 U.S. at 599.

Applying the modified categorical approach and comparing the elements in the charging documents to the generic offense, it is clear that none of Peltier's eighteen burglary convictions can serve as ACCA predicates. In six of the cases, there are no documents for the Court to review and, thus, the modified categorical approach cannot be used. In the other twelve cases, the inclusion of the term "occupied structure," which encompasses a limited class of vehicles, in the charging document puts the offenses outside the generic verison of burglary.

The Government suggests the Court look at the Presentence Investigation Report ("PSR") for details as to the location of the burglaries. However, the PSR is not among the limited class of documents the Court is permitted to review. Sykes, 844 F.3d at 715 (stating review is limited to the charging document, jury instructions, plea agreement, and plea colloquy). Even when the Court looked at the PSR, it is of no help because it delves into the facts of the conviction, which is not permitted in the analysis. The PSR does not provide any description of the elements of the offense of conviction as, for instance, by quoting a charging document. The United States Supreme Court has said lower courts may only look at the elements of the charge which the defendant pled guilty to and not the particular facts or factual basis for the plea. Taylor, 495 U.S. at 600-01 (rejecting the factual approach which permitted sentencing courts to look at "the facts of each defendant's conduct" in favor of a categorical elements only approach); Descamps, 133 S. Ct. at 2284 (stating the "factual basis" for the prior

14

plea is not be considered when applying the modified categorical approach); Mathis, 136 S. Ct. at 2252 (adhering to an "elements-only inquiry" which does not permit a judge to look at "what the defendant had actually done" or "explore the manner in which the defendant committed that offense").

Another perspective is that the only North Dakota class C burglary convictions which could count as predicate violent felonies for purposes of the ACCA are ones which charge burglary of a "building" or a "separately secured or occupied portion of a building" and thus make no reference to an "occupied structure." A conviction under the "occupied structure" element of the statute would not qualify as a violent felony under the ACCA. Since the charging documents in Peltier's case referenced an "occupied structure," none of those prior convictions can necessarily be equated with generic burglary. Therefore, he is entitled to the relief he seeks in his motion.

### III.  CONCLUSION

For the reasons set forth above, the Defendant is entitled to relief pursuant to 28 U.S.C. § 2255 in the felon in possession conviction. The Defendant's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 on Case No. 1:00-cr-043 (gun case) (Docket No. 89) is **GRANTED**. The Court finds the Defendant's Motion for Bond (Docket No. 93) and Motion to Expedite (Docket No. 105) in the gun case are moot. The Defendant's term of imprisonment in Case No. 1:00-cr-043 shall be reduced from 292-months to 120-months, which is the statutory maximum sentence.

The Defendant's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 (Docket No. 74) in Case No. 1:99-cr-005 (drug case) is **DENIED**. The Court finds the Motion to Expedite

(Docket No. 82) in the drug case is moot. The 210-month term of imprisonment in Case No. 1:99-cr-005 remains unchanged.

**IT IS SO ORDERED.**

Dated this 4th day of May, 2017.

                                                    */s/ Daniel L. Hovland*
                                                    Daniel L. Hovland, Chief Judge
                                                    United States District Court